**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

***vs*.**                                          **CRIMINAL ACTION NO.  2:12cr30**
**VELAIR VON COLLINS, II,**

**Defendant.**

## REPORT AND RECOMMENDATION/OPINION

This matter is before the undersigned for consideration of Defendant, Velair Von Collins, II's "Motion to Suppress Evidence" [D.E. 16] and "Motion to Suppress Evidence Pursuant to Franks v. Delaware" [D.E. 17], both filed on November 30, 2012.  The United States filed a consolidated Response to both Motions on December 6, 2012 [D.E. 20].

On December 14, 2012, came Defendant, in person, and by counsel, Brian J. Kornbrath, and the United States by its Assistant United States Attorney, Stephen D. Warner, for hearing on the motions.

## I.  Procedural History

Defendant Velair Von Collins, II was indicted by a grand jury attending the United States District Court for the Northern District of West Virginia on October 16, 2012 [D.E. 1].   The three-count indictment charges Defendant with Maintaining a Drug-Involved Premises (Count One); Possession of Material Used in the Manufacture of Methamphetamine (Count Two); and Possession of Firearms in Furtherance of a Drug Crime (Count Three).  The indictment also contains a forfeiture count.   An arrest warrant was issued, and Defendant was arraigned and pled "not guilty" on November 29, 2012.

## II. Threshold Question Relevant To Contents of Search Warrants

Two separate search warrants were issued in this case, both on September 4, 2012. There was some confusion regarding the affidavits in support of these search warrants. In Defendant's Motion to Suppress he argued that the first search warrant affidavit is completely "bare boned," in that it "simply states the police 'observed a marijuana plant growing out of a 5 gallon bucket and sitting in plain view in the open field backyard of 225 Diamond Street.'" Defendant attached a copy of the warrant and affidavit in support, which does appear to contain only that one sentence. As regards the second search warrant, which he also attached to his Motion to Suppress, Defendant argued it failed to establish probable cause to search his residence for materials related to the manufacturing of methamphetamine, and the good faith exception does not apply as the affidavit in support was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Defendant states that the affidavit in support of the second search warrant simply stated: 1) a C.I. gave information of a possible meth lab; 2) the C.I. said numerous vehicles pulled up and left the residence after short visits: and 3) a foul smell is often smelled in the area of the residence.[1]

In its Response, the United States advises there was some confusion as to the search warrants at issue, and that "if the Public Defendant secretary merely prints-out [sic] the pages and places them in a binder without benefit of the directory (i.e., index), that a reader would need to spend some time figuring it [sic] the material, rather than the short time it would take by reviewing my directory/index. Although the material does flow in numerical order. The second search warrant

---

[1]This last statement is also the subject of Defendant's separate Motion to Suppress based on <u>Franks v. Delaware</u>.

ends where the first one leaves off."

The first question for the Court is therefore whether both parties are in agreement regarding the content of the actual search warrant affidavits. The AUSA appearing and counsel for Defendant both stated on the record that they were in agreement as to the actual contents of the two search warrants, which did each contain a second page.

The affidavit in support of the first search warrant therefore states:

On the 4th of September 2012 while patrolling in the area of Diamond and Paul Street, this Officer Corporal C.D. Cross observed a marijuana plant growing out of a 5 gallon bucket which was sitting in plain view in the open field backyard of 225 Diamond Street City of Elkins, County of Randolph, State of West Virginia. Upon approaching the residence this Officer did also discover two more smaller marijuana plants, 1 growing in a green pot and 1 in a gray plastic container both sitting in the area of the marijuana plant in the 5 gallon bucket. This officer was unable to make contact with the resident of said address a male subject, namely Velair Von Collins II but did make contact with his wife, namely Stephanie Collins who was outside of the residence. Stephanie stated to this Officer that she has not lived at the residence since November of 2011 and she had only came [sic] by to visit Velair. While at the residence this officer did observe a red in color outbuilding with an approximately 50 to 100 lb propane cylinder with a black hose connected to it which ran through the side of the building to its interior. Prior to this incident Deputy B.T. Pawelczyk advised the Elkins Police Department that he was contacted by a Criminal Informant who gave him information pertaining to a possible meth lab being located at a trailer and outbuilding rented by Velair Collins located at the corner of Diamond and Paul Street Elkins WV. The C.I. also advised that lately the residence has been very busy and numerous vehicles have pulling [sic] up and leaving after short visits and that a foul smell is often smelled in the area of the residence. The C.I. also advised the Deputy that a Velair has been burning a fire in a fire ring located between the trailer and the building and the fire is used to destroy any waste and conceal the odor of a meth cook. This Officer did also view said fire ring located between the trailer and outbuilding. No further information at this time.

The second affidavit is a copy of the first, with the additional information added as follows:

On above date this Officer did obtain a search warrant for the property of 225 Diamond Street. Upon executing the search warrant this Officer along with Senior

patrolman R.W. Belt did discover an active methamphetamine cook as well as the precursors to making meth located inside of above mentioned outbuilding and trailer. No further information at this time.

### III.  The Contentions

The issues before the Court are as follows:

1.     Whether there is a substantial basis for probable cause in the first affidavit for issuance of the first search warrant;

2.     If there is not probable cause, whether the good faith exception applies;

3.     The effect of the officer's omission from the first affidavit of the fact that neither he nor an earlier officer at the residence detected an odor;

4.     Whether the first search warrant, if based only on the observation of marijuana, is too broad; and

5.     Whether the seizure of the firearms was warrantless, as firearms are not mentioned in the warrant.

### IV.Testimony and Evidence

The undersigned heard the testimony of Corporal C.D. Cross, of the Elkins, West Virginia Police Department, and admitted into evidence without objection 9 Exhibits.  Corporal Cross testified that on September 4, 2012, he was patrolling in his marked police cruiser, in the area of Paul and Diamond Streets, when he observed what he believed was a marijuana plant growing outside in a pot.  He turned his vehicle around and went back and pulled up to check, and saw it was a marijuana plant.  Cpl. Cross identified Exhibits 4 and 5 as photos of the marijuana plant as seen from the road.  He then walked up the driveway and observed two more, smaller marijuana plants next to the first.  He identified Exhibit 6 as a close-up photo of the plants, and 7 and 8 as photos of the

two smaller plants.

Cpl. Cross testified he went up to and knocked on the door of the residence (trailer) but no one answered. While there he saw the fire pit. There was no fire burning at the time. He went back to his office and told the Chief of Police what he had observed. Chief White told him about an email from Deputy B.T. Pawelczyk, which he thought was pertinent to what Cpl. Cross had discovered at the property. Cpl. Cross identified Exhibit 9 as the email from Deputy Pawelczyk that discussed information provided by a Confidential Informant ("CI") regarding a possible meth lab in Elkins at Defendant's residence, and information from other law enforcement officers who had patrolled the area.

Cpl. Cross and Chief White discussed getting a search warrant for the property. Chief White directed Corporal Cross to go back to the residence until another officer came on duty. When Officer Belt arrived at the residence, Cpl. White went to obtain the first search warrant. Cpl. White identified Exhibit 1 as the first search warrant and affidavit, and confirmed that it was five pages in length.

Cpl. Cross and Office Belt executed the first search warrant. When the entered an outbuilding, they saw a meth lab. When they entered the trailer they saw what appeared to be an active meth lab. They left the trailer and Cpl. Cross went to obtain the second search warrant based on the meth labs the officers observed during the first search. The officers did not seize anything pursuant to the first search warrant. Cpl. Cross identified Exhibit 2 as the second search warrant and affidavit. He identified Exhibit 3 as the list of items seized during the second search. He testified those items included precursors to meth manufacturing, including jars, coffee filters, scales, ziploc baggies, a cooking pot, ammonia, and liquid fire. There was a powdery white substance that had not

yet been confirmed by the State Police Laboratory. Also seized were several firearms.

On cross examination Cpl. Cross testified that Deputy Pawelczyk's email was apparently sent the same day as he applied for the warrant, but very early in the morning. The deputy stated in the email that officers did not detect an odor at the residence. When asked why he did not share that information with the magistrate, Cpl. Cross stated that he "put in what he observed...that corroborated the email." He agreed that there was an inconsistency between the C.I. information that there was often a foul smell at the residence, and the police report that there was no smell when they patrolled the area. He also testified that he was experienced with meth labs and was familiar with the odor, and that he also did not smell any such odor at the residence, even when he went up to knock on the door. He was again asked why he did not put the fact that neither he nor the other officers smelled a foul odor in the affidavit. Cpl. Cross replied again that he "Just put in what [he] did observe, not what [he] didn't."

Cpl. Cross was also questioned about his use of the phrase "open field" in his affidavit. He testified that what that phrase meant to him was that it was an "open view– that nothing obstructed [his] view." When asked whether he could have described the actual proximity of the marijuana plant to the residence, he said he could have, but admitted he only used the term "open field."

### V. Entitlement to Franks Hearing

Defendant moves to suppress evidence pursuant to Franks v. Delaware, 438 U.S. 154 (1978). The motion is based in particular on a fact omitted by Corporal Cross in his affidavit. In the first affidavit, Corporal Cross states:

> Prior to this incident Deputy B.T. Pawelczyk advised the Elkins Police Department that he was contacted by a Criminal Informant who gave him information pertaining to a possible meth lab being located at a trailer and outbuilding rented by Velair Collins located at the corner of Diamond and Paul Street Elkins WV. The C.I. also

advised that lately the residence has been very busy and numerous vehicles have pulling [sic] up and leaving after short visits <u>and that a foul smell is often smelled in the area of the residence</u>. The C.I. also advised the Deputy that a Velair has been burning a fire in a fire ring located between the trailer and the building and the fire is used to destroy any waste and conceal the odor of a meth cook. This Officer did also view said fire ring located between the trailer and outbuilding. No further information at this time.

(Emphasis added). As Defendant correctly states, "at the time the search warrant was submitted to the magistrate for consideration, the police had already conducted a 'patrol of the area [which] revealed a small fire burning in the fire ring <u>but no unusual odor was detected</u>.'" (See Attachment, Police Report by Deputy B.T. Pawelczyk, dated September 4, 2012 at 12:02 a.m.)(Emphasis added). The report also stated that the C.I. did not wish to become involved, but stated they [sic] would contact the [undersigned] <u>if they smelled the unusual odor again</u>. (Emphasis added). Defendant argues that the magistrate should have had the following facts: 1) a C.I. claimed there were "foul smells" outside defendant's residence; but 2) a police investigation of the defendant's residence showed "no unusual odor was detected."

To be entitled to a <u>Franks</u> hearing, a defendant must make a "dual showing . . . which incorporates both a subjective and an objective threshold component." <u>United States v. Colkley</u>, 899 F.2d 297, 300 (4th Cir. 1990). First, Defendants "must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." <u>Franks</u>, 438 U.S. at 155-156 (quotations omitted). Second, the offending information must be essential to the probable cause determination. If the offending information is excluded and probable cause still remains, no <u>Franks</u> hearing is required. <u>Id.</u> Accord United States v. Friedmann, 210 F.3d 227, 229 (4th Cir.)(purpose of <u>Franks</u> hearing is "to prevent to admission of evidence obtained pursuant to warrants that were issued only because

the issuing magistrate was misled into believing that there existed probable cause"), cert. denied, 531 U.S. 875 (2000). A Franks hearing is not required where neither statements in the affidavit, nor alleged omissions, "operated to defeat the sufficiency of the probable cause showing otherwise made or . . . so seriously undermined [the affiant's] credibility as to render [the probable cause showing] unreliable"), Photogrammetric Data Services, 259 F.3d at 237-238 cert. denied, 122 S. Ct. 1295 (2002); United States v. Akinoye, 185 F.3d 192, 199 (4th Cir. 199)(Franks hearing not required where probable cause existed apart from alleged inconsistencies in affidavit.), cert. denied, 528 U.S. 1177 (2000); United States v. Gray, 47 F.3d 1359, 1364-65 (4th Cir. 1995) (Franks hearing not required absent "substantial preliminary showing" that affiant made knowing and intentional false statements); United States v. Jeffus, 22 F.3d 554, 558 (4th Cir. 1994)(noting Defendant's heavy burden in establishing need for Franks hearing); and United States v. Chavez, 902 F.2d 259, 265 (4th Cir. 1990) (Defendant must show that agent affirmatively tried to mislead magistrate to warrant Franks hearing; ambiguity or lack of clarity is insufficient).

In this case, the issue is not one of inclusion, but of omission. The Fourth Circuit first applied Franks to intentional, material omissions in U.S. v. Colkley, 899 F.2d at 301-302. To successfully attack an affidavit based on omitted information, the defendant must show: (1) that the omission is the product of a deliberate falsehood or of a reckless disregard for the truth, and (2) inclusion of the omitted information in the affidavit would defeat probable cause. Id. See also Photogrammetric Data Services, 259 F.3d at 237-238. However, as the Court noted in Colkley, all known exculpatory information need not be included in an affidavit, and omission of information is less likely to require a Franks hearing than is the knowing inclusion of false information.

The first step of Franks requires the undersigned to determine whether the omission of the

fact that no unusual odor was detected by the police was made knowingly and intentionally or with reckless disregard for the truth. Based on a totality of the evidence and the demeanor of the witness, the undersigned finds the evidence does not establish reckless or intentional omission.

The second step of the Franks analysis states that Defendant must show that inclusion of the omitted information in the affidavit would defeat probable cause. The undersigned finds that the addition of the omitted information in this case would not defeat probable cause. According to the affidavit the C.I stated that "a foul smell is often smelled in the area of the residence." The C.I also advised the Deputy that "a Velair has been burning a fire in a fire ring located between the trailer and the building and the fire is used to destroy any waste and conceal the odor of a meth cook. This officer did also view said fire ring located between the trailer and outbuilding." Adding that he did not smell a foul smell in the area of the residence is actually consistent with the C.I.'s statement that the fire is used to conceal the odor. The police report from earlier that morning stated a small fire was actually burning at the time.

The undersigned finds Defendant has not met his burden under Franks of showing that statements in the affidavit or alleged omissions, "operated to defeat the sufficiency of the probable cause showing otherwise made or . . . so seriously undermined [the affiant's] credibility as to render [the probable cause showing] unreliable"), Photogrammetric Data Services, 259 F.3d at 237-238 cert. denied, 122 S. Ct. 1295 (2002).

## VI.  Motion to Suppress

"The right to privacy in one's home is a most important interest protected by the Fourth Amendment and a continuing theme in constitutional jurisprudence." United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). "Physical entry of the home is the chief evil against which the wording of

the Fourth Amendment is directed." <u>Payton v. New York</u>, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980) <u>quoting</u> <u>United States v. United States District Court</u>, 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972). "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his home and there be free from unreasonable government intrusion." <u>Silverman v. United States</u>, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961).

The Fourth Amendment to the Constitution of the United States provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." There is probable cause to search a home if there is a fair probability that evidence of a crime is located within the residence. <u>See</u> <u>United States v. Murphy</u>, 241 F.3d 447, 457 (6th Cir. 2001). Whether probable cause exists must be determined "under the totality of the circumstances." <u>See</u> <u>Illinois v. Gates</u>, 462 U.S. 213 (1983).

"[P]robable cause is a fluid concept - - turning on the assessment of probabilities in particular factual contexts - - not readily, or even usefully, reduced to a neat set of legal rules." <u>Id.</u> at 232.

In a review of an issued search warrant, "great deference" is given to the issuing judicial officer's probable cause determination. <u>United States v. Blackwood</u>, 913 F.2d139, 142 (4th Cir. 1990). The test on review is whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. <u>Massachusetts v. Upton</u>, 466 U.S. 727, 728 (1984). To that end, the reviewing court does not conduct a *de novo* review but instead limits itself to the information presented to the magistrate who issued the warrant. <u>Id</u>. <u>See also</u> <u>United States v. Wilhelm</u>, 80 F. 3d. 116, 118 (4th Cir. 1996).

The determination of whether the Randolph County magistrate had probable cause to issue the warrant to search is made by answering the question: From a totality of the circumstances presented to the issuing judge, was there "a fair probability that contraband or evidence of a crime" would be found in the residence and attached building? Illinois v. Gates, *Supra* at 238.

Defendant moves to suppress the evidence because the affidavit in support of the first search warrant failed to provide a substantial basis for concluding that probable cause existed. Again, at the time the motion was filed, counsel was led to believe the search warrant affidavit consisted of one sentence, that the officer observed one marijuana plant in an open field back yard, and, based on that one plant, sought permission to search the residence for "any controlled substances, equipment to manufacture and deliver controlled substances." Of course, as already noted, the affidavit actually contained a second page on which Corporal Cross stated that upon approaching the residence he observed two more marijuana plants, both growing in pots. He also observed a 50-100 pound propane cylinder with a black hose connected to it, which ran through the side of and into an outbuilding. He also added the information regarding the other officer's report, including the C.I. information as stated above.

Great deference is given to Magistrate Elbon's determination that probable cause existed to issue the warrant. In this case the first affidavit clearly outlines that Cpl. Cross looked over from Paul Street and "almost did a double-take" when he saw a marijuana plant setting out in the open. The plant was "in plain view in the open field backyard of 225 Diamond Street." The grass in the area of the plant seems to be maintained. When Cpl. Cross approached the plant, consistent with his testimony and the exhibits, two smaller plants could be seen in the same area, both also in pots. Cpl. Cross tried, but was unable to make contact with the owner.

Defendant argues that the phrase "open field," used in the affidavit, is a legal term of art, with the connotation the plants were outside the curtilage of the residence. The undersigned, however, finds Cpl. Cross' testimony credible, that he used "open field" to mean what he could see in plain view. Further, the entire sentence states that he saw the plant "growing out of a 5 gallon bucket which was sitting in plain view in the open field backyard of 225 Diamond Street." This statement is consistent with Cpl. Cross' testimony regarding his definition of "open field." The undersigned finds the words "open field" are moderated by the term "backyard." Further, the plants were in buckets as described in the affidavit by Cpl. Cross, which would be inconsistent with the phrase "open field" as a term of legal art.

Upon consideration of all which, the undersigned finds that from a totality of the evidence presented to Magistrate Elbon, there was "a fair probability that contraband or evidence of a crime" would be found in the residence and attached building.

A review of the second search warrant, which added only that upon executing the first warrant, the officers discovered an active meth lab, also provided probable cause for Magistrate Elbon to issue the second search warrant.

### VII.   Leon Exception

The Government argues that, even if the information in the affidavits were found to be insufficient for a finding of probable cause to issue the two search warrants,  the evidence seized should not be suppressed pursuant to the "good faith exception" stated in U.S.  v. Leon, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 677 (1984). Defendant argues that Leon does not apply because the affidavits were so lacking in indicia of probable cause as to render official belief in its existence entirely unseasonable. Defendant argues that the first affidavit in particular is "bare bones," in which

objective facts supporting a probable cause finding are completely lacking. He further argues that the case "involves minimal police investigation to corroborate unsubstantiated claims made by the police informant."

The exclusionary rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Calandra, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). In Leon, the Supreme Court explained the reason for rule:

> First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate.

Leon at 915, 104 S. Ct. at 3417. Further:

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.

Id. at 918, 104 S. Ct. 3 at 3419. The Supreme Court concluded:

> [T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.

Id. at 922, 104 S. Ct. at 3420. Therefore, the question of whether the good faith exception to the exclusionary rule should be applied to suppress evidence, depends on whether suppression of the evidence would have the desired effect of deterring police misconduct. In most cases, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and

acted within its scope . . . . there is no police illegality and thus nothing to deter."  Id. at 920-21, 104 S. Ct. at 3419.

The Fourth Circuit followed the Supreme Court's line of reasoning in United States v. Lalor:

Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

996 F.2d 1578 (4th Cir. 1993).  Accord United States v. Bynum, 293 F.3d 192, 197-199 (4th Cir. 2002) (applying good faith exception where "affidavit contained sufficient indicia of probable cause so as not to render reliance on it totally unreasonable," reversing district court's suppression of evidence); and United States v. Cluchette, 24 F.3d 577 (4th Cir. 1994) (applying good faith exception to search warrant issued by state judge over telephone, declining to determine whether warrant was valid under state law.)  In other words, the good faith exception applies unless "a reasonably well-trained officer . . . [should] have known that the search was illegal despite the magistrate's authorization."  Leon, 468 U.S. at 922 n.23.

The Fourth Circuit has noted "four situations in which an officer's reliance on a search warrant would not be reasonable," and the good faith exception would therefore not apply:

(1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
(2) the magistrate wholly abandoned his detached and neutral judicial role;
(3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
(4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995), quoting Leon, 468 U.S. at 923.

Defendants have not presented any evidence that the Randolph County magistrate "wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319 (1979)." U.S. v. Leon, 468 U.S. 897.   Regarding the actions of the Town Justice in Lo-Ji, the Supreme Court stated:

> He allowed himself to become a member, if not the leader, of the search party which was essentially a police operation. Once in the store, he conducted a generalized search under authority of an invalid warrant; he was not acting as a judicial officer but as an adjunct law enforcement officer. When he ordered an item seized because he believed it was obscene, he instructed the police officers to seize all "similar" items as well, leaving determination of what was "similar" to the officer's discretion. Indeed, he yielded to the State Police even the completion of the general provision of the warrant. Though it would not have validated the warrant in any event, the Town Justice admitted at the hearing to suppress evidence that he could not verify that the inventory prepared by the police and presented to him late that evening accurately reflected what he had ordered seized.

Defendants have presented no evidence showing Magistrate Elbon acted in any way similarly to the judicial officer  in Lo-Ji.   The second exception to Leon, therefore, does not apply in the instant case.

The undersigned also finds the warrant was not so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers could not reasonably presume it to be valid.

Defendant's arguments are generally based on factors 1) and 3).

The undersigned has already found that Corporal Cross did not knowingly or with a reckless disregard for the truth misrepresent the facts (or, in this case, omit a fact) to mislead the magistrate.

Further, a review of the affidavit does not indicate it "was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." This is not a case of a "bare bones" affidavit, relying on anonymous informants.

A "bare bones" affidavit is one in which an affiant merely recites the conclusions of others - - usually a confidential informant - - without corroboration or independent investigation of the facts alleged . . . . However, a 'bare bones' affidavit is not one with weak inferences, but rather one without facts from which a judge can determine probable cause.

United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996).   Although the affidavits here did include information from a confidential informant, as already discussed, they contained much more. Corporal Cross himself discovered the three marijuana plants that were in pots in the area of Defendant's residence and outbuilding.  He also noted the large propane cylinder with the black hose connected to it, running into an outbuilding.  Finally, he did corroborate at least one piece of information provided by the C.I., who said Defendant burned a fire in a fire ring located between the trailer and the outbuilding.  Corporal Cross stated in his affidavit that  he viewed "said fire ring, located between the trailer and outbuilding."

For all the above reasons, the undersigned finds the officers' reliance on the search warrants issued by Magistrate Elbon was objectively  reasonable.  The good faith exception, therefore, renders the evidence seized in the search admissible, even if it were determined there was not probable cause to issue the search warrants.

## VIII.  Seizure of Controlled Substances

Defendant argues that if, as the undersigned posited on the record, the meth information was not good, but the observation of the marijuana was good enough for a search, the search warrant for "controlled substances" was too broad.  First, the undersigned found there was probable cause, including the C.I. information regarding a possible meth lab, for the issuance of the search warrant. Only as an additional reason did the undersigned  state that even if the meth information was removed from the affidavit, the observation of the marijuana plants growing in plain view would be

enough to find probable cause for the search. Second, although the items to be seized must be described with particularity, the standard is "a pragmatic one: [t]he degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of item involved . . . ." United States v. Torch, 609 F.2d 1088 (4th Cir. 1979). Further, "a warrant authorizing a search for evidence relating to a specific illegal activity, such as narcotics . . . may be sufficiently particular." United States v. Dickerson, 166 F.3d 667 (4th Cir. 1999).

The undersigned therefore finds the warrant was not overly broad.

### IX.  Seizure of Firearms

Defendant further argues that neither warrant mentioned firearms, making the seizure of the firearms warrantless and therefore illegal. Under "property to be seized," the warrant states in particular only "[a]ny controlled substances, equipment to manufacture and deliver controlled substances." The Fourth Circuit has long held that "[g]uns are tools of the drug trade and are commonly recognized articles of narcotics paraphernalia." U.S. v. Ward, 171 F.3d 188 (4th Cir. 1999)(citing United States v. Ricks, 882 F.2d 885 (4th Cir. 1989); United States v. Soto, 959 F.2d 1181 (2d Cir. 1992). The Fourth Circuit recently decided the same issue, albeit in an unpublished decision, United States v. May, 446 Fed.Appx. 652 (4th Cir. 2011),[2] stating:

> May next argues that the firearms were improperly seized. He argues that because the warrant application only listed specific drugs, and items indicating the possession and sale of controlled substances, and did not specifically list firearms, the seizure of the firearms was outside the warrant's scope. We do not agree.
>
> In *United States v. Ward, 171 F.3d 188, 195 (4th Cir. 1999)*, we stated that "guns are tools of the drug trade and are commonly recognized articles of drug paraphernalia." Thus, under the plain language of the warrant application, the seizure of firearms was authorized.

---

[2]Pursuant to FRAP 32.1(b), a copy of U.S. v. May is attached.

Upon consideration of all which, the undersigned finds the seizure of the firearms was authorized by the search warrant application.

## **RECOMMENDATION**

For the reasons herein stated, it is **RECOMMENDED** that Defendants' Motion to Suppress Evidence [Docket Entry 16] and Motion to Suppress Evidence Pursuant to <u>Franks v. Delaware</u> [Docket Entry 17] both be **DENIED**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable John Preston Bailey, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

The Clerk of the Court is directed to direct this Report and Recommendation to counsel of record.

Respectfully submitted this 17th day of December, 2012.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.)))



This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)

United States Court of Appeals,

Fourth Circuit.
UNITED STATES of America, Plaintiff—Appellee,
v.
Carlton Bronta MAY, Defendant—Appellant.
No. 10–4053.

Submitted: June 27, 2011.
Decided: Sept. 21, 2011.

**Background:** Defendant was convicted in the United States District Court for the Eastern District of North Carolina, Louise W. Flanagan, Chief Judge, 2009 WL 928386, of one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base, one count of distribution of five grams or more of cocaine base, one count of possession with intent to distribute five grams or more of cocaine base, one count of possession of a firearm by a convicted felon, and one count of possession of a firearm in furtherance of a drug trafficking offense, and was sentenced to 300 months' imprisonment. Defendant appealed.

**Holdings:** The Court of Appeals held that:

(1) search warrant was sufficiently particular;
(2) firearms were properly seized during search of defendant's home; and
(3) evidence supported defendant's convictions.

Affirmed.

West Headnotes

**[1] Controlled Substances 96H** 🗝 **143**

96H Controlled Substances

    96HIV Searches and Seizures
      96HIV(C) Search Under Warrant
        96Hk141 Issuance, Requisites, and Validity of Warrant in General
          96Hk143 k. Descriptions, overbreadth. Most Cited Cases

Search warrant issued to search drug suspect's home was sufficiently particular in describing place to be searched; although there were three trailer homes located near one another that shared same address, application for warrant described suspect and his vehicle, police involved were familiar with suspect and his home, and there was minimal risk of mistake. U.S.C.A. Const.Amend. 4.

**[2] Controlled Substances 96H** 🗝 **154**

96H Controlled Substances

    96HIV Searches and Seizures
      96HIV(C) Search Under Warrant
        96Hk150 Execution and Return of Warrants in General
          96Hk154 k. Objects seized; plain view. Most Cited Cases

**Firearms** were properly **seized** during search of suspect's home pursuant to search **warrant**, notwithstanding that **warrant** application only listed specific drugs and items indicating the possession and sale of **controlled substances** and did not specifically list **firearms**, as guns were tools of drug trade and were commonly recognized articles of drug paraphernalia.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.)))

U.S.C.A. Const.Amend. 4.

**[3] Conspiracy 91** &#9758;    **47(12)**

91 Conspiracy

    91II Criminal Responsibility
        91II(B) Prosecution
            91k44 Evidence
                91k47 Weight and Sufficiency
                    91k47(3) Particular Conspiracies
                        91k47(12) k. Narcotics and dangerous drugs. Most Cited Cases
    Evidence that defendant was involved in longstanding relationship with witnesses that centered around purchase, processing, and distribution of cocaine and cocaine base, that defendant frequently "fronted" witness cocaine base to distribute to others, that witness "cooked" cocaine into cocaine base for defendant, and that another witness frequently purchased large quantities of cocaine base from defendant was sufficient to support defendant's conviction for conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base. Comprehensive Drug Abuse Prevention and Control Act of 1970, §§ 401(a)(1), 406, 21 U.S.C.A. §§ 841(a)(1), 846.

**[4] Weapons 406** &#9758;    **293(3)**

406 Weapons

    406V Prosecution
        406V(E) Weight and Sufficiency of Evidence
            406k289 Possession, Use, Carrying
                406k293 Possession After Conviction of Crime
                    406k293(3) k. Possession. Most Cited Cases

**Weapons 406** &#9758;    **293(4)**

406 Weapons

    406V Prosecution
        406V(E) Weight and Sufficiency of Evidence
            406k289 Possession, Use, Carrying
                406k293 Possession After Conviction of Crime
                    406k293(4) k. Existence or eligibility of prior conviction. Most Cited Cases
    Evidence that three firearms were found in defendant's home and that defendant was a convicted felon was sufficient to support defendant's conviction for possession of a firearm by a convicted felon. 18 U.S.C.A. § 922(g)(1).

**[5] Weapons 406** &#9758;    **294(6)**

406 Weapons

    406V Prosecution
        406V(E) Weight and Sufficiency of Evidence
            406k289 Possession, Use, Carrying
                406k294 Use or Possession in Commission of Crime
                    406k294(6) k. Furtherance; nexus. Most Cited Cases
    Evidence that defendant possessed three firearms, two of which were located in room in defendant's house where police discovered strong evidence of drug distribution activities, that drug dealers relied on firearms to protect themselves because they cannot avail themselves of traditional law enforcement services for protection, and presence of ammunition in firearms was sufficient to support defendant's conviction for possession of a firearm in furtherance of a drug trafficking offense. 18 U.S.C.A. § 924(c).

**[6] Criminal Law 110** &#9758;    **1177.3(1)**

110 Criminal Law

    110XXIV Review
        110XXIV(Q) Harmless and Reversible Error
            110k1177.3 Sentencing and Punishment
                110k1177.3(1) k. In general. Most Cited Cases

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.)))

Any error in district court's drug quantity calculation in sentencing defendant upon his conviction for multiple drug and firearms offenses was harmless, as defendant was sentenced to statutory mandatory minimum for his convictions. U.S.C.A. Const.Amend. 6; 18 U.S.C.A. § 924(c); Comprehensive Drug Abuse Prevention and Control Act of 1970, § 401(b)(1)(A), 21 U.S.C.A. § 841(b)(1)(A).

**\*653** Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern. Louise W. Flanagan, Chief District Judge. (5:08–cr–00331–FL–1).W. James Payne, Shallotte, North Carolina, for Appellant. George E.B. Holding, United States Attorney, Jennifer P. May–Parker, Jennifer E. Wells, Kristine L. Fritz, Assistant United States Attorneys, Raleigh, North Carolina, for Appellee.

Before GREGORY, SHEDD, and KEENAN, Circuit Judges.

Affirmed by unpublished PER CURIAM opinion.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

**\*\*1** Carlton Bronta May appeals his conviction and 300–month sentence for one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 846 (2006) ("Count One"); one count of distribution of five grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) ("Count Two"); one count of possession with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) ("Count Three"); one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924 (2006) ("Count Four"); and one count of possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c) ("Count Five"). He argues that the district court erred in denying his motion to suppress certain evidence, that insufficient evidence supported his conviction, and that the court erred in its drug quantity finding for sentencing. We affirm.

May was indicted after police executed a search warrant on his home, catching him in the act of trying to dispose of cocaine **\*654** base in the toilet, and discovering firearms, currency, more cocaine base, digital scales and drug packaging materials. Prior to executing the warrant, police arranged a controlled purchase wherein an informant, Tyrone Kenney, purchased fourteen grams of cocaine base from May for $400. After he was arrested and read his *Miranda*[FN*] warnings, May made inculpatory statements to police indicating that he owned the firearms despite his prior felony conviction and had distributed significant quantities of cocaine and cocaine base.

> FN* *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

May moved prior to trial to suppress the evidence seized during the search. He argued that the address listed on the affidavit for his home is actually shared by three trailer homes and the warrant was thus not sufficiently particularized. The magistrate judge recommended denying the motion and the district court adopted that recommendation.

At trial, the Government adduced evidence from the police who arranged the controlled purchase and executed the warrant, as well as Kenney and another witness, George Jefferson, who testified that they frequently purchased cocaine and cocaine base from May. May's witnesses testified that May was not a drug dealer and that they did not observe May sell Kenney cocaine base on the day of the controlled purchase. May was convicted of each count of the indictment.

Prior to sentencing, the Probation Office issued a presentence investigation report ("PSR") indicating that based on the amount of cocaine base sold to Kenney, the amount recovered from the home, and the amount May stated in his interview with police, for sentencing purposes, May was accountable for 3304 grams of cocaine base. May objected, but the district court indicated that because it was contemplating sentencing May to the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.)))

statutory mandatory minimum, disputing the drug quantity would be an academic exercise. May ultimately was sentenced to 300 months' imprisonment, the statutory mandatory minimum pursuant to 21 U.S.C. § 841(b)(1)(A) (2006) and 18 U.S.C. § 924(c) (2006). He noted a timely appeal.

I. Motion to Suppress

**2** May argues that the district court erred in denying his motion to suppress. He claims error in four respects: (1) that the warrant was facially defective; (2) that the good faith exception should not apply; (3) that the seizure of the firearms was not authorized by the warrant or the plain view exception; and (4) that his statements were fruits of the illegal arrest. We review the factual findings underlying a district court's ruling on a motion to suppress for clear error and the court's legal conclusions de novo. *United States v. Kelly,* 592 F.3d 586, 589 (4th Cir.), *cert. denied,* ––– U.S. ––––, 130 S.Ct. 3374, 176 L.Ed.2d 1260 (2010). When evaluating the denial of a suppression motion, we construe the evidence in the light most favorable to the Government, the prevailing party below. *Id.*

a. Validity of the Warrant

May first claims that the warrant was invalid on its face because it was not sufficiently particular in describing the place to be searched. The validity of a search warrant is reviewed under the totality of the circumstances, determining whether the issuing judge had a substantial basis for finding there was probable cause to issue the warrant. *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Grossman,* 400 F.3d 212, 217 (4th Cir.2005). We afford great deference to the probable cause determination **655** of the issuing judge. *United States v. Allen,* 631 F.3d 164, 173 (4th Cir.2011). We avoid applying " 'hypertechnical' scrutiny of affidavits lest police officers be encouraged to forgo the warrant application process altogether." *United States v. Robinson,* 275 F.3d 371, 380 (4th Cir.2001) (quoting *Gates,* 462 U.S. at 236, 103 S.Ct. 2317).

The requirement for particularity in warrants "ensures

that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). The particularity requirement is satisfied when an officer in possession of a search warrant describing a particular place to be searched can reasonably ascertain and identify the intended place to be searched. *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757 (1925).

[1] The gravamen of May's objection to the warrant is that there are three trailer homes, located near one another, that share the same address. We are not persuaded by his argument. The application for the warrant described May and his vehicle, and the police involved were familiar with May and his home. Other courts of appeal have upheld the validity of a warrant where, as here, a potential ambiguity is remedied by the warrant's reference to the owner of the property or the subject of the search. *See, e.g., United States v. Durk,* 149 F.3d 464, 466 (6th Cir.1998) (warrant not invalid when one part of the description of the premises to be searched is inaccurate, but the description has other parts that identify the place with particularity); *United States v. Bedford,* 519 F.2d 650, 655 (3d Cir.1975) (noting that warrant lacking any physical description of particular apartment is valid if it specifies the name of the occupant of the apartment against which it is directed); *United States v. Gitcho,* 601 F.2d 369, 371 (8th Cir.1979) (stating that personal knowledge of agents executing the warrant of particular premises intended to be searched validated a search pursuant to a warrant providing the incorrect address). Here, it is clear that the officers executing the warrant knew which trailer home was to be searched and there was minimal risk of mistake. We accordingly conclude that May's argument is without merit.

**3** Because we conclude that the warrant was not overbroad, we need not address whether the officers' conduct was reasonable for the purposes of the *United States v. Leon,* 468 U.S. 897, 922–26, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1987) good faith exception.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.)))

b. Firearms Seizure

May next argues that the firearms were improperly seized. He argues that because the **warrant** application only listed specific drugs, and items indicating the possession and sale of **controlled substances**, and did not specifically list **firearms**, the **seizure** of the **firearms** was outside the **warrant's** scope. We do not agree.

[2] In *United States v. Ward,* 171 F.3d 188, 195 (4th Cir.1999), we stated that "guns are tools of the drug trade and are commonly recognized articles of drug paraphernalia." Thus, under the plan language of the warrant application, the seizure of firearms was authorized. Moreover, because the officers were lawfully present in the home and the firearms were discovered in the open, they were properly seized under the plain view doctrine. *See United States v. Williams,* 592 F.3d 511, 521 (4th Cir.2010) (describing the scope of the plain view doctrine).

**\*656** c. May's Statements to Police

May next argues that his statements to police were invalid as fruits of the illegal search. The Fourth Amendment requires the suppression of evidence that is the fruit of unlawful police conduct. *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Because the search was valid, May's claim that the statements must be suppressed fails.

II. Sufficiency of the Evidence

May next argues that the evidence was insufficient to support any of his five convictions. We review de novo challenges to the sufficiency of the evidence supporting a jury verdict. *United States v. Kelly,* 510 F.3d 433, 440 (4th Cir.2007). "A defendant challenging the sufficiency of the evidence faces a heavy burden." *United States v. Foster,* 507 F.3d 233, 245 (4th Cir.2007). We review a sufficiency of the evidence challenge by determining whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.

*United States v. Collins,* 412 F.3d 515, 519 (4th Cir.2005). We review both direct and circumstantial evidence, and accord the government all reasonable inferences from the facts shown to those sought to be established. *United States v. Harvey,* 532 F.3d 326, 333 (4th Cir.2008). In reviewing for sufficiency of the evidence, we do not review the credibility of the witnesses, and assume that the jury resolved all contradictions in the testimony in favor of the government. *Kelly,* 510 F.3d at 440. We will uphold the jury's verdict if substantial evidence supports it, and will reverse only in those rare cases of clear failure by the prosecution. *Foster,* 507 F.3d at 244–45.

May challenges each count for which he was convicted, and we address each in turn.

a. Count One

**\*\*4** Because this count involved a conspiracy charge under 21 U.S.C. § 846, the Government was required to prove (1) an agreement between May and another person to engage in conduct that violated a federal drug law; (2) May's knowledge of the conspiracy; and (3) May's knowing and voluntary participation in the conspiracy. *See United States v. Strickland,* 245 F.3d 368, 384–85 (4th Cir.2001). Since a conspiracy is by its nature clandestine and covert, it is generally proved by circumstantial evidence. *United States v. Burgos,* 94 F.3d 849, 857 (4th Cir.1996) (en banc). Evidence tending to prove a conspiracy may include a defendant's relationship with other members of the conspiracy, and the existence of a conspiracy may be inferred from a development and collocation of circumstances. *Id.* at 858. "Circumstantial evidence sufficient to support a conspiracy conviction need not exclude every reasonable hypothesis of innocence, provided the summation of the evidence permits a conclusion of guilt beyond a reasonable doubt." *Id.* (citation omitted).

May argues that, at best, the Government's evidence shows that he had a buyer-seller relationship with Kenney and Jefferson. Such a relationship is not, in and of itself, evidence of a conspiracy. *United States v. Mills,* 995 F.2d 480, 485 (4th Cir.1993).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.)))

After review of the record, we are unpersuaded by May's claims. First, evidence of a buyer-seller relationship is relevant to "the issue of whether a conspiratorial relationship exists," *United States v. Yearwood,* 518 F.3d 220, 226 (4th Cir.2008) (internal quotation marks omitted). Further, "[e]vidence of a buy-sell transaction coupled with a substantial quantity of drugs ... support[s] a reasonable inference that the parties [are] co-conspirators." **657*United States v. Reid,* 523 F.3d 310, 317 (4th Cir.2008) (internal quotation marks and ellipsis omitted). Similarly, continued relationships and repeated drug transactions between parties are indicative of a conspiracy, particularly when the transactions involve substantial amounts of drugs. *Id.*

[3] Here, May's statements to police, coupled with Kenney's and Jefferson's testimony, indicate that May was involved in a longstanding relationship with both men that centered around the purchase, processing, and distribution of cocaine and cocaine base. May frequently "fronted" Jefferson cocaine base to distribute to others. Jefferson "cooked" cocaine into cocaine base for May. Kenney frequently purchased large quantities of cocaine base from May. In light of these facts, the jury was permitted to convict May of the conspiracy charge, and we will not disturb that conviction.

b. Count Two

May next argues that the evidence was insufficient to convict him of distribution of five grams or more of cocaine base. The Government sought to prove this charge through evidence that on April 21, 2008, Kenney conducted a controlled purchase of cocaine base from May wherein he purchased fourteen grams of cocaine base for $400. The elements of distribution are "(1) distribution of [a] narcotic controlled substance, (2) knowledge of the distribution, and (3) intent to distribute the narcotic controlled substance." *United States v. Randall,* 171 F.3d 195, 209 (4th Cir.1999).

**5 May argues that while witnesses agreed that Kenney was present in May's home on the day of the

alleged controlled transaction, several of his witnesses disputed Kenney's account. At bottom, May's challenge is based on a dispute over the credibility of the witnesses. The jury was entitled to believe Kenney's account over those of May's witnesses. It is, of course, axiomatic that we do not review the credibility of the witnesses. *See Kelly,* 510 F.3d at 440.

c. Count Three

May next argues that there was insufficient evidence for the jury to convict him of possession with intent to distribute. In order to establish a violation of § 841(a)(1), the government must prove beyond a reasonable doubt: "(1) possession of the controlled substance; (2) knowledge of the possession; and (3) intent to distribute." *United States v. Hall,* 551 F.3d 257, 267 n. 10 (4th Cir.2009). Possession may be actual or constructive. *United States v. Rusher,* 966 F.2d 868, 878 (4th Cir.1992). "A person may have constructive possession of contraband if he has ownership, dominion, or control over the contraband or the premises or vehicle in which the contraband was concealed." *United States v. Herder,* 594 F.3d 352, 358 (4th Cir.), *cert. denied,* —— U.S. ——, 130 S.Ct. 3440, 177 L.Ed.2d 346 (2010). Intent to distribute may be inferred if the amount of drugs found exceeds an amount normally associated with personal consumption. *United States v. Wright,* 991 F.2d 1182, 1187 (4th Cir.1993).

On appeal, May argues that the only basis for his conviction for possession with intent to distribute was his statements made to police at the time of his arrest. He further claims that his statements cannot form the basis for his conviction because his wife testified that he was intoxicated at the time he was released from jail.

Again, we are unpersuaded. First, May's statements are sufficient on their own to form the basis of this conviction. Moreover, in executing the warrant, police discovered cocaine base and digital scales, packaging material, large amounts of currency, and firearms—all indicia of distribution. Finally, the Government offered rebuttal*658 evidence attacking May's claim that he was intoxicated when he made statements to police, and we

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.)))

will not second-guess the jury's decision to credit the Government's witnesses over May's. In sum, this evidence is more than enough to form the basis of a conviction.

d. Count Four

May next argues that his conviction for possession of a firearm by a convicted felon was not supported by sufficient evidence. To support a conviction for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), the government must prove the following elements: "(1) the defendant previously had been convicted of a [felony]; (2) the defendant knowingly possessed ... the firearm; and (3) the possession was in or affecting commerce, because the firearm had traveled in interstate or foreign commerce at some point during its existence." *United States v. Moye,* 454 F.3d 390, 394–95 (4th Cir.2006) (en banc).

**6 [4] Here, three firearms were found in May's home. He conceded that he was a convicted felon and admitted that he possessed the firearms, and as we have already concluded that his statements were admissible, the evidence supports this conviction.

e. Count Five

May argues that the Government did not adduce sufficient evidence to convict him of Count Five, possession of a firearm in furtherance of a drug trafficking offense. In order to prove a 18 U.S.C. § 924(c) violation, the Government must prove two elements: "(1) the defendant used or carried a firearm, and (2) the defendant did so during and in relation to a drug trafficking offense or crime of violence." *United States v. Mitchell,* 104 F.3d 649, 652 (4th Cir.1997).

[5] The Government adduced evidence that May possessed the firearms, two of which were located in the room where police discovered the strong evidence of drug distribution activities. The Government also adduced uncontroverted expert witness testimony that drug dealers rely on firearms to protect themselves because they cannot avail themselves of traditional law enforcement services for protection. May claims that because not all of the guns

were loaded, they were not used in furtherance of a drug crime. The presence of ammunition, however, is only one factor weighing in favor of concluding that the firearms were used in furtherance of a drug trafficking crime. Based on the location of the firearms, the presence of ammunition in the handgun seized, and May's statements, the jury could properly have convicted him of a violation of 18 U.S.C. § 924(c). We will therefore affirm May's convictions.

III. Drug Quantity Calculation

Finally, May argues that the district court erred in calculating the amount of drugs attributable to him. The court concluded that May was accountable for 3304 grams of cocaine base. We review a sentence for reasonableness under an abuse-of-discretion standard. *Gall v. United States,* 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). A preserved objection to a sentence is reviewed for harmless error. *See Puckett v. United States,* 556 U.S. 129, 129 S.Ct. 1423, 1432, 173 L.Ed.2d 266 (2009) (noting that procedural errors at sentencing are "routinely subject to harmlessness review"); *see also United States v. Lynn,* 592 F.3d 572, 576 (4th Cir.2010) (preserved claims are reviewed for abuse of discretion, and if the court finds abuse, reversal is required unless the court concludes the error was harmless).

[6] Here, the only claim of sentencing error raised by May is that the drug quantity was incorrect. However, as May was **659 sentenced to the statutory mandatory minimum, any error in drug quantity calculation is clearly harmless. We therefore affirm his sentence.

Accordingly, we affirm the district court's judgment. Counsel's motion to withdraw/substitute counsel is denied. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

**7 *AFFIRMED.*

C.A.4 (N.C.),2011.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)

(Cite as: 446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.)))

U.S. v. May
446 Fed.Appx. 652, 2011 WL 4379301 (C.A.4 (N.C.))
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.