**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                             **CRIMINAL NO. 2:12-CR-30
(Judge Bailey)**

**VELAIR VON COLLINS, II,**

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION/OPINION DENYING DEFENDANT'S MOTION TO SUPPRESS

I.     Introduction

Pending before this Court is the Report and Recommendation/Opinion [Doc. 24] issued by Magistrate Judge John S. Kaull on December 17, 2012. This Court, having reviewed the defendant's Motion to Suppress Evidence [Doc. 16], defendant's Motion to Suppress Evidence Pursuant to *Franks v. Delaware* [Doc. 17], Defendant's Memorandum of Law in Support of Motion to Suppress Evidence [Doc. 18], the Response by the United States to Motion to Suppress Evidence and Motion to Suppress Evidence Pursuant to *Franks* [Doc. 20], the Report and Recommendation/Opinion [Doc. 24], Defendant's Objections to Report and Recommendation/Opinion [Doc. 25], and the exhibits introduced at the evidentiary hearing [Doc. 23], does hereby **ADOPT** the Report and Recommendation/Opinion.

II. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. **Thomas v. Arn**, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); **Snyder v. Ridenour**, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Kaull's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The defendant timely filed his Objections on December 21, 2012 [Doc. 25]. Accordingly, such portions to which objections were made will be reviewed *de novo*. This Court will review the remaining portions to which no objections have been filed for clear error.

III. Factual Background

On October 16, 2012, defendant Velair Von Collins, II, was charged in a three-count indictment charging him with Maintaining a Drug-Involved Premises (Count One); Possession of Material Used in the Manufacture of Methamphetamine (Count Two); and Possession of Firearms in Furtherance of a Drug Crime (Count Three). Defendant has pled "not guilty" to the crimes contained in the Indictment [Doc. 1], and his trial date is currently set for April 9, 2013.

Defendant Collins has moved to suppress all evidence seized at his residence based

2

on an alleged failure to execute proper search warrants. The motions to suppress stem from the execution of two search warrants at defendant Collins' property at 225 Diamond Street, Elkins, West Virginia on September 4, 2012. The affidavit in support of the first search warrant states that on that day, Officer Corporal C.D. Cross observed three marijuana plants growing in pots outside the defendant's residence, which were sitting in plain view in the open field backyard. Corporal Cross additionally discovered an extinguished fire ring between the defendant's trailer and a red outbuilding, along with a propane cylinder with a black hose connected to it and which ran through the side of the building to its interior. Corporal Cross's observations corroborated information given by a confidential informant which suggested a possible meth lab being operated in the defendant's trailer and red outbuilding.

The full text of the affidavit in support of the first search warrant reads as follows:

On the 4$_{th}$ of September 2012 while patrolling in the area of Diamond and Paul Street, this Officer Corporal C.D. Cross observed a marijuana plant growing out of a 5 gallon bucket which was sitting in plain view in the open field backyard of 225 Diamond Street City of Elkins, County of Randolph, State of West Virginia. Upon approaching the residence this Officer did also discover two more smaller marijuana plants, 1 growing in a green pot and 1 in a gray plastic container both sitting in the area of the marijuana plant in the 5 gallon bucket. This officer was unable to make contact with the resident of said address a male subject, namely Velair Von Collins II but did make contact with his wife, namely Stephanie Collins who was outside of the residence. Stephanie stated to this Officer that she has not lived at the residence since November of 2011 and she had only came [sic] by to visit Velair. While at the residence this officer did observe a red in color outbuilding with an approximately 50 to 100 lb propane cylinder with a black

3

> hose connected to it which ran through the side of the building to its interior. Prior to this incident Deputy B.T. Pawelczyk advised the Elkins Police Department that he was contacted by a Criminal Informant who gave him information pertaining to a possible meth lab being located at a trailer and outbuilding rented by Velair Collins located at the corner of Diamond and Paul Street Elkins WV. The C.I. also advised that lately the residence has been very busy and numerous vehicles have pulling [sic] up and leaving after short visits and that a foul smell is often smelled in the area of the residence. The C.I. also advised the Deputy that a Velair has been burning a fire in a fire ring located between the trailer and the building and the fire is used to destroy any waste and conceal the odor of a meth cook. This Officer did also view said fire ring located between the trailer and outbuilding. No further information at this time.

The second affidavit is a copy of the first, with the additional information added as follows:

> On above date this Officer did obtain a search warrant for the property of 225 Diamond Street. Upon executing the search warrant this Officer along with Senior patrolman R.W. Belt did discover an active methamphetamine cook as well as the precursors to making meth located inside of above mentioned outbuilding and trailer. No further information at this time.

IV. Analysis

In the defendant's objections, he contends that (1) the magistrate judge's finding that a substantial basis exists to support probable cause is in err; (2) that the officer intentionally withheld certain information in his affidavit; (3) that the *May* decision supports defendant's claim that the warrant failed to provide authority to search for firearms; and (4) that the *Leon* Good Faith exception should not apply.

4

1. Probable Cause Finding

This Court gives "great deference" to a magistrate's finding of probable cause in issuing a search warrant. *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990). In its consideration of the probable cause determination, this Court is mindful that "probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Further, this Court does not conduct a *de novo* review, but instead limits itself to the information presented to the magistrate who issued the warrants. *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984); *see also United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996).

Whether the Randolph County magistrate had probable cause to issue the warrants to search is best answered by the question: From a totality of the circumstances presented to the magistrate, did there exist "a fair probability that contraband or evidence of a crime" would be found in the trailer and detached outbuilding? *Gates*, 462 U.S. at 238. This Court answers that question in the affirmative.

Since the Supreme Court's shift toward a "totality of the circumstances" test, "it has been the rare case in which the Fourth Circuit has found a search warrant based on an informant tip to be inadequate, particularly where the information has been corroborated. *See, e.g., United States v. Blauvelt*, 638 F.3d 281, 287-88 (4th Cir.), *cert denied*, 132 S.Ct. 111 (2011). The Supreme Court has further stated that corroboration of "innocent facts" provided by a CI may be sufficient; it is not necessary that there be corroboration of the criminal conduct itself. *Alabama v. White*, 496 U.S. 325, 331-32 (1990). The Fourth

5

Circuit has recognized that the preferred standard in this regard is "a pragmatic one: [t]he degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved . . .." **United States v. Torch**, 609 F.2d 1088, 1090 (4th Cir. 1979). A search is not deemed overbroad merely because it results in criminal charges in addition to those initially contemplated. **Anderson v. Maryland**, 427 U.S. 463, 482-83 (1976).

To pass constitutional muster, there must exist a sufficient nexus between the criminal conduct, the items to be seized, and the place to be searched. See **United States v. Anderson**, 851 F.2d 727, 729 (4th Cir. 1988)("the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence"). The defendant thus poses a question in his objection: "[I]f only three marijuana plants are observed in an open field, what would the officers then be allowed to search for?" [Doc. 25 at 2]. Accordingly, the defendant contends that the search is not founded on probable cause and is far broader than the underlying facts permit. A search is not deemed overbroad, however, merely because it results in criminal charges in addition to those initially contemplated. **Anderson v. Maryland**, 427 U.S. at 482-83. Furthermore, regardless of whether an insufficient nexus is established linking the drug activity to the defendant's residence, its sufficiency will nevertheless be upheld if it passes muster under the **Leon** "good faith exception." **United States v. Lalor**, 996 F.2d 1587, 1582-83 (4th Cir. 1993).

The defendant bases his assertion of overbroadness of the search on an incomplete recitation of the facts. In addition to the three marijuana plants discovered outside, in his

6

objections the defendant states that the "only other two essential facts in support of probable cause that relate to a suspected methamphetamine lab" is the CI's statement that there was "heavy vehicular travel at the residence" and that there was a "foul smell." [Doc. 25 at 2]. The defendant himself has ironically omitted or chosen to ignore material facts essential to the instant inquiry; *i.e.* the information provided by the CI, which was corroborated by the officers, and contained in the affidavit in support of the search warrant, which includes the existence of a 50-100 pound propane cylinder with a black hose connected to it, which ran through the side of and into the red outbuilding. The defendant also fails to mention the fire ring located between the defendant's trailer and outbuilding, which was corroborated by the officers, and which was contained in the affidavit. These facts clearly lend credence to the CI's tip that a meth lab was contained therein. This information was incorporated into the affidavit after it was verified, and the magistrate clearly relied on it in issuing the search warrant.

Therefore, this Court finds that in viewing all the information contained in the four corners of the affidavit, considering the totality of the circumstances there did exist a "fair probability that contraband or evidence of a crime would be found" in the defendant's trailer and outbuilding as described in the search warrant. **Gates**, 462 U.S. at 238. Further, as the R&R clearly states, even if the meth information was not contained in the affidavit, the officers' observation of the marijuana plants would have provided sufficient probable cause to issue the search warrant. Although the items to be seized must be described with particularity, the standard is "a pragmatic one: [t]he degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of item involved . . .." **United States v. Torch**, 609 F.2d 1088 (4th Cir. 1979). Finally,

"a warrant authorizing a search for evidence relating to a specific illegal activity, such as narcotics . . . may be sufficiently particular." **United States v. Dickerson**, 166 F.3d 667 (4th Cir. 1999). As such, this Court agrees with the magistrate judge that the warrant was not overly broad. Accordingly, the defendant's Objection is **OVERRULED**.

In his objection, the defendant also takes exception to the magistrate judge crediting the officer's testimony at the evidentiary hearing regarding the term "open field" contained in the affidavit, rather than taking the "four corners" of the affidavit at face value. The defendant reiterates his position that "[t]he term 'open field' is a legal term of art that means an area far removed from the curtilage of the residence such that no right to privacy exists." [Doc. 25 at 2]. Therefore, the defendant argues that an affidavit such as this which includes the term "open field" would not create a sufficient nexus to provide probable cause to search the curtilage.

This Court has reviewed the four corners of the affidavit and finds probable cause within sufficient to support the scope of the magistrate's search warrant. The very words contained in the affidavit expressly state that the three marijuana plants could be seen in plain view from the residence. Regardless of how inartful the officer's wording contained in the affidavit may have been insofar as he did use a legal term of art, this does not belie the remaining facts contained within the affidavit which do support a finding that the marijuana plants were in fact within the curtilage.

"Extent-of-curtilage questions should be resolved with particular reference to the following four factors, at least to the extent that they bear upon whether the area claimed to be curtilage is so intimately tied to the home itself that it should be placed under the

home's 'umbrella' of protection: (1) the proximity of the area to the home; (2) whether the area is within an enclosure surrounding the home; (3) the nature and uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by passersby." ***United States v. Dunn***, 480 U.S. 294, Syl. 1 (1987).

In applying the above criteria, this Court finds the marijuana plants were in the defendant's curtilage. First, the three plants were located in close proximity to the defendant's trailer. The photographs presented at the evidentiary hearing clearly show that the area where the three marijuana plants were growing were no more than approximately twenty or thirty yards from the trailer and just on the edge of the defendant's driveway. Second, the area where the plants were located, while not within an enclosure surrounding the home (such as a fence)[1], were, however, found in a strip of landscaping located well within a thick natural enclosure of trees and overgrown brush. As to the third element, as just explained, the plants were found in a landscaped area close to the trailer and which had neatly mowed grass on either side. Fourth, although admittedly a poor attempt at concealing the plants, this Court nevertheless finds that the defendant did attempt to protect the area from observation by passersby by intermingling it in the strip of landscaping described above. *See* ***United States v. Van Dyke***, 643 F.2d 992 (4th Cir. 1981)(holding that marijuana found in defendant's honeysuckle patch, which was located 150 feet from the residence, was within "curtilage" of the residence). To the untrained eye, the plant could certainly be viewed as a part of the landscaping. Unfortunately for the

---

[1] "The curtilage has been defined as 'an area of domestic use immediately surrounding a dwelling and usually but not always fenced in with a dwelling.' ***United States v. LaBerge***, 267 F.Supp. 686, 692 (D. Md. 1967)." ***United States v. Van Dyke***, 643 F.2d 992 (4th Cir. 1981).

defendant, officers were able to identify the same as marijuana plants.

Having review the above, this Court is of the opinion that the marijuana plants were in the curtilage. Thus, there was an expectation of privacy under the Fourth Amendment, which would require a search warrant for the premises. As previously noted, the officers did leave the defendant's property and obtained a proper search warrant. Therefore, the defendant's Objection is **OVERRULED**.

    2.    ***Franks v. Delaware***

The defendant objects to the R&R insofar as he alleges that it "completely fails to credit important information withheld from the issuing magistrate." [Doc. 25 at 2]. The defendant relies on an alleged omission of information in the affidavit whereby the officers did not include the fact that they did not notice the "foul smell" reported by the informant. Defendant believes the R&R's finding that this omission was not intentional "defies logic." [Doc. 25 at 3]. Defendant, however, ignores that the previously-described fire ring had been burning prior to the officers' arrival. As such, it is completely logical to conclude that the fire ring, the purpose of which was to conceal a meth cook odor as specified in the affidavit, explains why the officers did not detect the "foul smell" and did not include this information in the affidavit. This Court finds any omission regarding this fact was not intentional and was not material. Omission of *immaterial* information from an affidavit does not invalidate a search warrant; the warrant is valid as long as the information which was included still establishes probable cause. ***Blauvelt***, 638 F.3d at 289-90. As this Court found above, probable cause has been established. Therefore, the defendant's second objection is **OVERRULED**.

### 3. Seizure of Firearms

The defendant next objects to the R&R's reliance on the ***May***[2] opinion, which he claims actually supports the defendant's claim that the warrant failed to provide authority to search for firearms. The defendant asserts that in ***May***, the police sought permission to search for "items indicating the possession and sale of controlled firearms." Thus, the defendant argues that the ***May*** Court logically concluded that firearms are "tools of the drug trade" and the terms of the warrant in that case permitted the seizure of firearms.

In fact, in ***May***, the warrant provided for the seizure of "items indicating the possession and sale of controlled *substances*." (Emphasis added). The Fourth Circuit held that "'guns are tools of the drug trade and are commonly recognized articles of drug paraphernalia.'" ***May***, 446 Fed. Appx. at 655; *quoting* **United States v. Ward**, 171 F.3d 188, 195 (4th Cir. 1999).

The defendant posits that in his case, the warrant requested leave only to search for "Any controlled substances, equipment to manufacture and deliver controlled substances." In applying that language, the defendant argues, without citing to any case law, that firearms are not equipment used to manufacture and deliver controlled substances. This is simply contrary to ***May*** and other caselaw. The R&R, on the other hand, cites to several additional published cases in the Fourth Circuit which stand for the proposition that "[g]uns are tools of the drug trade and are commonly recognized articles of narcotics paraphernalia." **United States v. Ward**, 171 F.3d at 195; *citing* **United States v. Ricks**, 882 F.2d 885 (4th Cir. 1989); *see also* **United States v. Soto**, 959 F.2d 1181 (2d

---

[2] **United States v. May**, 446 Fed.Appx. 652 (4th Cir. 2011).

Cir. 1992). Accordingly, the defendant's Objection is **OVERRULED**.

    4.    *Leon* "Good Faith Exception"

"[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness," ***Illinois v. Gates***, 462 U.S. at 267 (WHITE, J., concurring in judgment), for "a warrant issued by a magistrate normally suffices to establish" that a law enforcement officer has "acted in good faith in conducting the search." ***United States v. Ross***, 456 U.S. 798, 823, n. 32 (1982). "Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, *cf.* ***Harlow v. Fitzgerald***, 457 U.S. 800, 815–819 (1982), and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued."

***United States v. Leon***, 468 U.S. 897, 922-23 (1984) (footnotes omitted).

In determining whether the ***Leon*** good faith exception applies, this Court may find it does so apply even where a search warrant is "facially deficient" as long as "the warrant . . . was not so facially deficient as to preclude reasonable reliance upon it." ***United States v. Dickerson***, 166 F.3d 667, 694-95 (4th Cir. 1999).

Although this Court addressed the sufficiency of probable cause above, where a defendant challenges both probable cause and applicability of the good faith exception, this Court may proceed directly to the good faith issue. *See e.g.* ***Leon***, at 925.

The Supreme Court has carved out "four situations in which an officer's reliance on

12

a search warrant would not be reasonable," that is, where the "good faith exception" would not apply, two of which appear to be contested in the Motion to Suppress:

 (1) where the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;

*****

 (3) where the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

**United States v. Hyppolite**, 65 F.3d 1151, 1156 (4th Cir. 1995), *quoting* **Leon**, at 923.

Relying on the first exception, the defendant objects to the **Leon** "Good Faith Exception" again relying on the absence in the affidavit of any information as to whether the officers detected the "foul smell" about which the CI had provided information. Again, this Court has previously addressed this issue and finds no intentional omission occurred, and any alleged omission certainly fails to give rise to the degree contemplated under the first exception under **Leon**. This exception contemplates affirmative information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth. As previously addressed, this was an omission which this Court found to be immaterial as it was easily explained by the presence of the fire which had been burning earlier that day.

The third exception contemplates that situation in which the allegations contained in the affidavit upon which the magistrate relied are allegedly "bare boned." The facts

presented in this case are a far cry from the "bare bones" affidavit found in *United States v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996), as cited by the defendant. In *Wilhelm*, the warrant was "based solely upon an anonymous phone caller's tip that the caller had recently observed marijuana sales in Wilhelm's residence. The officer did not learn the caller's name or any other identifying information, nor did he meet with the caller in person at any point.

In this case, the informant provided specific, first-hand information, which provided a basis for the informant's knowledge. The informant advised that the defendant's residence has been very busy and numerous vehicles have been pulling up and leaving after short visits and that a foul smell is often smelled in the area of the residence. The informant also advised that the defendant had been burning a fire in a fire ring located between the trailer and the building, the purpose of which is to destroy any waste and to conceal the odor of a meth cook. When the officer arrived at the defendant's house, he also viewed the fire ring located between the trailer and outbuilding.

Not only does the above corroborate the informant's information, but it also explains why the officers did not smell an odor upon arrival. As the informant indicated, the fire had already been burning; however, by the time the officers arrived the fire had been extinguished. Accordingly, the defendant's Objection is **OVERRULED**.

V. Conclusion

For the reasons stated above, this Court **ADOPTS** the Report and Recommendation/Opinion of the Magistrate Judge **[Doc. 24]**. The Defendant's Objections to Report and Recommendation/Opinion **[Doc. 25]** are **OVERRULED**. Accordingly, the

defendant's Motion to Suppress Evidence **[Doc. 16]** and defendant's Motion to Suppress Evidence Pursuant to *Franks v. Delaware* **[Doc. 17]** are **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit certified copies of this Order to all counsel of record herein.

**DATED**: February 28, 2013.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE